**Paul Isaac DOIRON, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 09–07–00514–CR.**

Court of Appeals of Texas, Beaumont.

Submitted March 6, 2009.

Decided March 18, 2009.

Todd Leblanc, Beaumont, for appellant.

John D. Kimbrough, District Attorney, Cory Kneeland and Joel Vazquez, Asst. District Attorneys, Orange, for The State.

Before GAULTNEY, KREGER, and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

After a jury found Paul Isaac Doiron guilty of driving while intoxicated, the trial court sentenced him to 180 days' confinement and a fine of $800. The court then suspended Doiron's sentence and placed him on community supervision.

In a single appellate issue, Doiron contends that the trial court erred in denying his motion to suppress. Doiron argues that the stop of his vehicle was illegal because the arresting officer had no reasonable suspicion supporting the stop. Doiron further argues that the officer's assertion that he was exercising his community caretaking function was neither reasonable nor "totally divorced" from his investigation of criminal activity.

At the suppression hearing, the trial court reviewed the affidavit of the arrest-

ing officer, Jason Laughlin, and heard argument of counsel before making its decision. Doiron's counsel argued the stop was illegal because the officer's affidavit failed to state that Doiron committed a traffic offense or was suspected of a crime. The State contended the stop was legitimate because it was proper for Officer Laughlin to determine Doiron's condition under the circumstances; he was traveling on the side of the road at 1:00 a.m. with his brake lights blinking intermittently.

In denying Doiron's motion, the trial court relied on *Wright v. State*, 7 S.W.3d 148, 151–52, (Tex.Crim.App.1999), which recognizes a police officer's community caretaking function as a reasonable exception to the Fourth Amendment's warrant requirement.

### · Standard of Review

■ Appellate courts review trial court decisions on motions to suppress evidence for abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App.2006). The reviewing court views the evidence in the light most favorable to the trial court's ruling. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex.Crim.App.2007). "In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App.1999). If the trial court makes no explicit findings of fact, we imply fact findings to support the court's ruling when the evidence supports the implied findings. *Gutierrez*, 221 S.W.3d at 687. As *Gutierrez* explained:

> Generally, implied findings would be limited to the record produced at the suppression hearing. However, when the parties subsequently re-litigate the suppression issue at the trial on the merits, we consider all evidence, from both the pre-trial hearing and the trial, in our review of the trial court's determination.

*Id.* (citing *Rachal v. State*, 917 S.W.2d 799, 809 (Tex.Crim.App.1996) ("Where the State raises the issue at trial either without objection or with subsequent participation in the inquiry by the defense, the defendant has made an election to re-open the evidence, and consideration of the relevant trial testimony is appropriate in our review.")).[1]

### Community Caretaking ·

#### *Evidence*

At the suppression hearing, the only evidence presented to the trial court was Officer Laughlin's affidavit. The affidavit stated:

> On August 26, 2006, at approximately 1:00 a.m. I was patrolling in the 1800 · block of Western Avenue in West Orange, Texas, when I observed a black, Honda Civic automobile traveling slowly on the side of Western Avenue with the brake lights blinking intermittently. I saw that there was a lone, white male occupying the vehicle. I activated my emergency lights and stopped the vehicle. When I made contact with the driver/suspect, I noticed a strong odor of an alcoholic beverage emitting from his breath and vehicle. I had the suspect exit the vehicle and I noticed that he was unsteady on his feet, that his eyes were bloodshot red and glassy, his clothes were untidy, and he had a stamp

---

1. .In *Webb v. State*, the Texas Court of Criminal Appeals observed: "To hold that appellate review is limited to facts adduced at the pretrial hearing under circumstances such as these, however, could place the appellate court in the untenable position of having to reverse a conviction in the face of a record which supports, albeit belatedly, the trial court's ruling." 760 S.W.2d 263, 272 n. 13 (Tex.Crim.App.1988).

on his hand which appeared to have come from a bar. I also noticed that the suspect had vomited on the ground outside of the vehicle he had been operating. I asked the suspect to perform several sobriety tests. He exhibited signs of intoxication on all tests administered. I arrested the suspect for Driving While Intoxicated and transported him to the Orange County Jail. While at the jail, I requested a sample of the suspect's breath or blood and he refused to provide such sample.

In our review, we also consider Officer Laughlin's trial testimony that was elicited by defense counsel about the stop and the officer's testimony related to his community caretaking function. *See Gutierrez*, 221 S.W.3d at 687; *Rachal*, 917 S.W.2d at 809. Doiron's counsel cross-examined Officer Laughlin:

Counsel: Okay. What—what was Mr. Doiron doing that caused your attention to be directed to his way?

Witness: The way he was driving at 1:00 o'clock in the morning. The way he pulled off to the side of the road and had the door open in his car with his head leaning out of it, directing me his way.

Counsel: You say at 1:00 o'clock in [the] morning. Is there any law against driving at 1:00 o'clock in the morning?

Witness: No, sir, there's not.

Counsel: And please tell the jury what—what traffic violation or traffic ticket you gave him. Did you give him one?

Witness: I arrested the subject for driving while intoxicated after interviewing him.

Counsel: And did you cite him for any traffic violations?

Witness: No, sir, I did not. I did not.

Counsel: Did he violate any traffic laws?

Witness: He did not violate any traffic laws, no, sir.

Counsel: You didn't stop him for speeding?

Witness: No, sir. I stopped him for community caretaking, sir.

Counsel: You stopped him for community caretaking?

Witness: Correct.

Counsel: Explain to the [ ] jury what community caretaking is.

Witness: We have an obligation to—if I see somebody that may need help or something and feel—I feel that it's my obligation to stop and help the citizen or anybody in the community. And being that he was pulled over with his door open and his brakes were displayed, I felt that it was my duty to make sure that he was okay to operate a motor vehicle on a public roadway.

Still under cross-examination, Officer Laughlin testified that he was concerned not only for Doiron's safety but also for the safety of others. Officer Laughlin stated that as he approached the vehicle he detected a "strong odor" of alcohol. Defense counsel further cross-examined Officer Laughlin:

Counsel: And so, you are telling the jury that your purpose for confronting a citizen and asking them how much they've had to drink was your caretaking function?

Witness: I'm advising, sir, that he was stopped initially in the middle of the roadway. He had his door open puking, which is not normal activity at 1:00 o'clock in the morning on Western Avenue. He proceeded off of the roadway with the door open as he was puking. Yes, sir, that is why I made contact with him; and he was operating a motor vehicle as a lone occupant.

*Applicable Case Law*

In 1999, the Texas Court of Criminal Appeals recognized the "commu-

nity caretaking" function and its narrow application. *Wright,* 7 S.W.3d at 151–52 (citing *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)). As *Wright* explained, a police officer's job involves more than enforcing the law, conducting investigations, or gathering evidence for criminal proceedings. *Id.* at 151. An officer also investigates accidents that involve no criminal liability claim, directs traffic, and performs other duties that are best described as " 'community caretaking functions.' " *Id.* (quoting *Cady,* 93 S.Ct. at 2528). Part of an officer's duty to "serve and protect" involves stopping and assisting "an individual whom a reasonable person—given the totality of the circumstances—would believe is in need of help." *Id.*

■■ To invoke the community caretaking exception, an officer's primary motive must be concern for the individual's well-being. *Corbin v. State,* 85 S.W.3d 272, 277 (Tex.Crim.App.2002). Here, Officer Laughlin testified that he had an obligation to help someone whom he saw and thought might need help, and that as an officer he felt it was his obligation, under the circumstances, to make sure that Doiron was okay. We conclude that the trial court, as the exclusive judge of credibility and as finder of fact could have found that Officer Laughlin's primary motivation in stopping Doiron was based on his concern for caring for the community.

■ Next, we must determine whether Officer Laughlin's belief that Doiron needed assistance was reasonable. *See Corbin,* 85 S.W.3d at 277. When determining whether an officer acted reasonably in stopping an individual to determine if he needs assistance, appellate courts consider the following non-exclusive factors: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assis-

tance independent of that offered by the officer; and (4) to what extent the individual—if not assisted—presented a danger to himself or others. *Corbin,* 85 S.W.3d at 277; *Wright,* 7 S.W.3d at 151–52. "Because the purpose of the community caretaking exception is to allow an officer to 'seize' and assist an individual whom he reasonably believes is in need of help, the first factor is entitled to the greatest weight." *Corbin,* 85 S.W.3d at 277.

■ All four factors—distress, location, other assistance, and danger to himself—support the reasonableness of Officer Laughlin's actions. Doiron's distress was readily apparent; the driver's door of the vehicle was open and Doiron was vomiting while leaning out the door. As to location, the vehicle was stopped in the road and then pulled slowly to the roadside, with the motor running and the brake lights flashing intermittently. Doiron was alone, so there was no one there except the officer to aid him or to transport him to a location where he could receive care if necessary. Without anyone else available to render assistance, it would be reasonable for Officer Laughlin to stop and determine whether Doiron was in danger. The community caretaking cases are fact specific, and under the circumstances of this case, we conclude that Officer Laughlin acted reasonably. *See Lebron v. State,* 35 S.W.3d 774, 777 (Tex.App.Texarkana 2001, pet. ref'd) (applying exception when the officer found motorist slowly driving away from reported accident on two flat tires before coming to a full stop on the roadway). We overrule Doiron's sole appellate issue.

Because we hold that Doiron's motion to suppress was properly denied, we affirm the trial court's judgment.

AFFIRMED.