PD-1603-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/9/2015 4:52:30 PM
Accepted 12/11/2015 12:09:01 PM
ABEL ACOSTA
CLERK

No. 01-14-00628-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

MANUEL NAVA, JR.,                                              Appellant

v.

THE STATE OF TEXAS,                                           Appellee

Appeal from Harris County

\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

JOHN R. MESSINGER
Assistant State Prosecuting Attorney
Bar I.D. No. 24053705

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

FILED IN
COURT OF CRIMINAL APPEALS

December 11, 2015

ABEL ACOSTA, CLERK

## NAMES OF ALL PARTIES TO THE TRIAL COURT'S JUDGMENT

*The parties to the trial court's judgment are the State of Texas and Appellant, Manuel Nava, Jr..

*The case was tried before the Honorable Michael Fields, County Court at Law No. 14, Harris County, Texas.

*Counsel for Appellant at trial and on appeal was Maverick J. Ray, 1419 Franklin St., 2nd Floor, Houston, Texas 77002.

*Counsel for the State at trial was Abad Samir Salman, Assistant District Attorney, 1201 Franklin Street, Suite 600, Houston, Texas 77002.

*Counsel for the State on appeal was Patricia McLean, Assistant District Attorney, 1201 Franklin, Suite 600, Houston, Texas 77002.

*Counsel for the State before this Court is John R. Messinger, Assistant State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711.

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

GROUND FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Must an officer be primarily motivated by a personal desire to help in order to justify a temporary seizure pursuant to the community caretaking doctrine?**

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

APPENDIX (Opinion of the Court of Appeals)

ii

# INDEX OF AUTHORITIES

**Cases**

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6-7

*Brigham City v. Stuart*, 547 U.S. 398 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cady v. Dombrowski*, 413 U.S. 433 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

*Corbin v. State*, 85 S.W.3d 272 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . . . 3, 6

*State v. Cruz*, 461 S.W.3d 531 (Tex. Crim. App. 2015). . . . . . . . . . . . . . . . . . . . . 5

*Derichsweiler v. State*, 348 S.W.3d 906 (Tex. Crim. App. 2011). . . . . . . . . . . . . . 8

*City of Indianapolis v. Edmond*, 531 U.S. 32 (2000). . . . . . . . . . . . . . . . . . . . . . 5

*Fernandez v. California*, 134 S. Ct. 1126 (2014). . . . . . . . . . . . . . . . . . . . . . . . . 5

*Gonzales v. State*, 369 S.W.3d 851 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . 3, 6

*Kentucky v. King*, 563 U.S. 452 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Maryland v. King*, 133 S. Ct. 1958 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*Laney v. State*, 117 S.W.3d 854 (Tex. Crim. App. 2003). . . . . . . . . . . . . . . . . . 3, 7

*Nava v. State*, 01-14-00628-CR, __S.W.3d__, 2015 Tex. App. LEXIS 11622 (Tex. App.–Houston [1st Dist.] Nov. 10, 2015). . . . . . . . . . . . . . . . . . . . . . . 2, 4

*Whren v. United States*, 517 U.S. 806 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

**Statutes and Rules**

TEX. CODE CRIM. PROC. art. 28.01 §1(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

TEX. R. APP. P. 66.3(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

No. 01-14-00628-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

MANUEL NAVA, JR.,                                                    Appellant

v.

THE STATE OF TEXAS,                                                 Appellee

\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through its State Prosecuting Attorney, and respectfully urges this Court to grant discretionary review of the above named cause, pursuant to the rules of appellate procedure.

**STATEMENT REGARDING ORAL ARGUMENT**

The State requests oral argument. The State is asking this Court to overrule precedent based on a divergence from controlling Supreme Court cases. This decision will require consideration of numerous distinct but interrelated doctrines. Conversation will help to clarify these distinctions and resolve the issue presented.

1

## STATEMENT OF THE CASE

Appellant pleaded guilty to Class A driving while intoxicated and was sentenced to one year in jail, probated for 18 months.[1] The court of appeals held that the trial court abused its discretion by denying appellant's motion to suppress, in part, because there was no evidence that the officer who initiated the traffic stop was primarily motivated by the community caretaking doctrine.

## STATEMENT OF PROCEDURAL HISTORY

On November 10, 2015, the court of appeals reversed appellant's conviction in a published opinion and remanded for further proceedings.[2] No motion for rehearing was filed. The State's petition is due on December 10, 2015.

## GROUND FOR REVIEW

**Must an officer be primarily motivated by a personal desire to help in order to justify a temporary seizure pursuant to the community caretaking doctrine?**

## ARGUMENT AND AUTHORITIES

In *Cady v. Dombrowski*, the Supreme Court recognized that law enforcement officers frequently engage in "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a

---

[1]   1 CR 69.

[2]   *Nava v. State*, 01-14-00628-CR, __S.W.3d__, 2015 Tex. App. LEXIS 11622 (Tex. App.–Houston [1st Dist.] Nov. 10, 2015).

criminal statute."[3]  Three exceptions to the warrant requirement flow from this: the automobile impoundment/inventory doctrine, the emergency doctrine (not to be confused with the exigent circumstances doctrine), and what is commonly called the community caretaking doctrine.[4]  "The common thread in each of these three exceptions," according to this Court, "is the officer's purpose."[5]  Specifically, this Court held in *Corbin v. State* that "a police officer may not properly invoke his community caretaking function if he is primarily motivated by a non-community caretaking purpose."[6]

Appellant was arrested for driving while intoxicated.  He moved to suppress any evidence stemming from his allegedly illegal seizure.[7]  Relying on its discretion to rule based on the motions themselves, the trial court denied the motion.[8]  It

---

[3]    413 U.S. 433, 441 (1973).

[4]    *Laney v. State*, 117 S.W.3d 854, 861 (Tex. Crim. App. 2003).

[5]    *Id*. at 860.

[6]    85 S.W.3d 272, 276-77 (Tex. Crim. App. 2002).  This was more recently reaffirmed in *Gonzales v. State*, 369 S.W.3d 851, 854-55 (Tex. Crim. App. 2012) ("Whether an officer properly invoked his community-caretaking function requires a two-step inquiry: (1) whether the officer was primarily motivated by a community-caretaking purpose; and (2) whether the officer's belief that the individual needs help was reasonable.").

[7]    Supp. CR (10/14/14) 8-13.

[8]    1 RR 4.  *See* TEX. CODE CRIM. PROC. art. 28.01 §1(6) ("the court may determine the merits of said motion on the motions themselves, or upon opposing affidavits, or upon oral testimony, subject to the discretion of the court.").  While the motion itself is boilerplate, the memorandum filed in support of it contains specific legal argument based on these factual assertions:
    On September 16, 2013, Officer Ferguson was on patrolling [sic] the 2900 block of Shaver. Officer Ferguson saw a Ford F-150 truck exit a parking lot and merge onto Shaver.  Officer Ferguson saw an unidentified male appear to run after the truck and [sic] as it drove north on

3

concluded that the seizure was justified, in part, because of the community caretaking warrant exception.[9]

The court of appeals reversed. Citing *Corbin*, it held that "the officer must actually be motivated by a community caretaking purpose."[10] "While it may be that it would have been reasonable for the officer to stop Nava in his community caretaking function, without evidentiary support, there is no basis to conclude that the officer intervened for this reason and not for ordinary investigative purposes."[11]

The lower court is wrong because *Corbin* was wrong. Requiring proof of the officer's subjective motivation is inconsistent with both Supreme Court precedent and this Court's treatment of the similar emergency doctrine.[12] It is also bad policy.

<u>The Supreme Court's consideration of motive is extremely limited.</u>

The general rule concerning an officer's justification for a seizure is well known:

Fourth Amendment reasonableness "is predominantly an objective inquiry." We

---

Shaver. The male stopped running, turned around, and began walking back to the parking lot entrance. Right as the passenger door opened, Officer Ferguson initiated a traffic stop on the Ford F-150, which was being driven by the Defendant. Officer Ferguson states in his Offense Report he stopped the vehicle because he believed a disturbance was occurring and subsequently arrested the defendant for DWI.
1 CR 57-66.

[9]    Supp. CR (10/14/14) 6-7.

[10]    Slip op. at 9 (citations omitted).

[11]    Slip op. at 10.

[12]    TEX. R. APP. P. 66.3(c).

4

ask whether "the circumstances, viewed objectively, justify [the challenged] action." If so, that action was reasonable "whatever the subjective intent" motivating the relevant officials. This approach recognizes that the Fourth Amendment regulates conduct rather than thoughts, and it promotes evenhanded, uniform enforcement of the law.[13]

As a unanimous Supreme Court held in *Whren v. United States*, "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."[14] "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent."[15]

The two limited exceptions to this rule are special-needs[16] and administrative-search[17] cases, "where 'actual motivations' do matter."[18] The Supreme Court has "never held, outside the context of inventory search or administrative inspection . . ., that an officer's motive invalidates objectively justifiable behavior

---

[13]   *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (citations omitted) (alteration in original).

[14]   517 U.S. 806, 813 (1996).

[15]   *Id*. at 814 (emphasis in original).

[16]   "Special needs" go beyond the normal need for law enforcement, such as the need to deter drug use in public schools, or the need to assure that railroad employees engaged in train operations are not under the influence of drugs or alcohol. *al-Kidd*, 131 S. Ct. at 2081. These are "programmatic searches of either the public at large or a particular class of regulated but otherwise law-abiding citizens." *Maryland v. King*, 133 S. Ct. 1958, 1978 (2013). Inventory searches have been discussed interchangeably with special needs, *al-Kidd*, 131 S. Ct. at 2083, although the latter term is more expansive.

[17]   Administrative warrants authorize, for example, an inspection of fire-damaged premises to determine the cause, or an inspection of residential premises to assure compliance with a housing code. *al-Kidd*, 131 S. Ct. at 2081.

[18]   *Id*. at 2080.

4

under the Fourth Amendment[,]" and has "repeatedly held and asserted the contrary."[19] *Whren* "reinforces the principle that . . . programmatic purposes may be relevant to the validity of Fourth Amendment intrusions undertaken pursuant to a general scheme without individualized suspicion."[20] However, even when an inquiry into programmatic purpose is appropriate, "this inquiry is directed at ensuring that the purpose behind *the program* is not 'ultimately indistinguishable from the general interest in crime control.'"[21] "It has nothing to do with discerning what is in the mind of the individual officer conducting the search."[22]

None of these cases mention *Cady v. Dombrowski* or "community caretaking" as an exception to a purely objective inquiry. This is presumably because offering assistance is neither administrative nor a special-needs, "programmatic search[] of either the public at large or a particular class of regulated but otherwise law-abiding

---

[19]  *Whren*, 517 U.S. at 812. *See*, *e.g.*, *Fernandez v. California*, 134 S. Ct. 1126, 1134 (2014) (rejecting inquiry into police motive when they are responsible for the absence of the resident who objects to the search of a house); *Kentucky v. King*, 563 U.S. 452, 464 (2011) (rejecting any bad faith analysis for exigencies created by police). *See also State v. Cruz*, 461 S.W.3d 531, 537 (Tex. Crim. App. 2015) (to determine whether a particular question falls within the booking exception to *Miranda*, this Court asks "whether the question reasonably relates to a legitimate administrative concern, applying an objective standard."); *id*. ("If a question is a legitimate administrative question, then it does not matter whether the officer should know that the question is reasonably likely to elicit an incriminating response.").

[20]  *City of Indianapolis v. Edmond*, 531 U.S. 32, 45-46 (2000).

[21]  *Brigham City v. Stuart*, 547 U.S. 398, 405 (2006) (citation omitted) (emphasis added).

[22]  *Id*.

5

citizens."[23] Whether a citizen reasonably appears to need help is a fact-intensive, case-by-case analysis. The purpose behind the doctrine—helping people—is "totally divorced" from fighting crime. And it is a service to the public we legitimately expect law enforcement to perform.[24] This Court ignores *Whren* and its progeny when it makes the officer's motive the threshold issue.

The clearest argument for why consideration of motive in this context is consistent with *Whren* comes from Judge Cochran's concurrence to *Corbin*:

> The decision to stop an automobile is generally deemed to be constitutionally reasonable when an officer has probable cause to believe that a traffic violation has occurred, regardless of his subjective "bad faith" and underlying purpose to search for evidence of another crime. The community caretaking doctrine acts in reverse: the officer does not have probable cause to believe that the person stopped has committed a crime, but the detention is reasonable under the Fourth Amendment if the officer has subjective good faith and an objectively reasonable belief that the person detained is in need of immediate assistance.[25]

The Supreme Court has since rejected the assertion that subjective intent is ignored "only when there exists probable cause to believe that a violation of law has occurred."[26] That Court held—perhaps unfairly, given the focus of *Whren*—that,

---

[23]     *Maryland v. King*, 133 S. Ct. at 1978.

[24]     *See Gonzales*, 369 S.W.3d at 856 (citing an A.B.A. report stating that, when determining "appropriate objectives and priorities for police service, local communities should initially recognize that most police agencies are currently given responsibility, by design or default, to[, inter alia,] . . . (e) facilitate the movement of people and vehicles . . . (i) create and maintain a feeling of security in the community . . . [and] (k) provide other services on an emergency basis.").

[25]     *Corbin*, 85 S.W.3d at 281 n.8 (Cochran, J., concurring).

[26]     *al-Kidd*, 131 S. Ct. at 2082.

6

although searches and seizures for reasons other than suspected wrongdoing are rare, only an "undiscerning reader" would conclude that ulterior motives invalidate searches that are "legitimate for other reasons."[27]

This Court's requirement of evidence of primary purpose is also inconsistent with its treatment of the emergency doctrine.

This Court "use[s] an objective standard of reasonableness in determining whether a warrantless search is justified under the Emergency Doctrine."[28] "The distinction between the emergency doctrine and the community caretaking doctrine . . . is a narrow, but critical one."[29] "[W]hile both doctrines are based on an officer's reasonable belief in the need to act pursuant to his or her 'community caretaking functions,' the emergency doctrine is limited to the functions of protecting or preserving life or avoiding serious injury."[30] The other difference is that while the community caretaking doctrine "deals primarily with warrantless searches and seizures of automobiles . . . the emergency doctrine deals with warrantless entries of, but is not limited to, private residences."[31] It makes little sense to impose more

---

[27]     *Id*. at 2082 & n.2.

[28]     *Laney*, 117 S.W.3d at 862; *see also id*. at 863 ("courts should carefully apply the objective standard of reasonableness when determining whether an officer's warrantless entry and search is justified under the emergency doctrine.").

[29]     *Id*. at 861.

[30]     *Id*.

[31]     *Id*.

7

judicial safeguards when a vehicle is temporarily detained than when a home is entered.

Conclusion

Community caretaking is a legitimate police function. Continuing to hold that an objectively reasonable community caretaking seizure can be rendered illegitimate because of the officer's primary motivation is insupportable in light of *al-Kidd* and this Court's treatment of the emergency doctrine. There is no reason why officers should be held to a solely objective standard when alleging a penal violation but have their subjective motivations scrutinized when the facts show someone might have needed help. If an objective standard is sufficient to protect a person's rights when circumstances "suggest that *something* of an apparently criminal nature is brewing[,]"[32] it is sufficient to protect the rights of those who reasonably appear to be in need.

---

[32] *Derichsweiler v. State*, 348 S.W.3d 906, 917 (Tex. Crim. App. 2011) (emphasis in original).

## PRAYER FOR RELIEF

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals grant this Petition for Discretionary Review and remand the case so that the reasonableness of this community caretaking seizure can be decided.

Respectfully submitted,

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

P.O. Box 13046
Austin, Texas 78711
John.Messinger@SPA.Texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that according to the WordPerfect word count tool the applicable portion of this document contains 2,777 words.

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 9th day of December, 2015, the State's Petition for Discretionary Review was served electronically through the electronic filing manager or e-mail on the parties below.

Dan McCrory
Harris County District Attorney's Office
1201 Franklin, Suite 600
Houston, Texas 77002
mccrory_daniel@dao.hctx.net

Maverick J. Ray
1419 Franklin St., 2nd Floor
Houston, Texas 77002
maverickraylaw@gmail.com

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney



**APPENDIX**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00628-CR

_____

## MANUEL NAVA, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Criminal Court at Law No. 14
Harris County, Texas
Trial Court Case No. 1919049**

---

### OPINION

The State charged Manuel Nava by information with Class A misdemeanor driving while intoxicated. TEX. PENAL CODE ANN. § 49.04 (West Supp. 2014). Before trial, Nava moved to suppress the evidence that the State acquired during his traffic stop and subsequent arrest, contending that the police officers lacked

reasonable suspicion to detain him. The trial court denied Nava's motion without a response from the State or hearing evidence. Nava then pleaded guilty in accord with a plea agreement with the State, and he received a suspended sentence of one year's confinement, conditioned on completion of 18 months of community supervision. In one issue, Nava challenges the trial court's denial of his motion to suppress, arguing that the State adduced no evidence that the stop was justified by the community caretaking exception or a reasonable suspicion that he engaged in reckless driving. We reverse and remand.

## Background

Nava's unsworn memorandum filed in support of his motion to suppress contains the only account of the circumstances surrounding his arrest. According to the memorandum, a patrolling police officer, Officer Ferguson, saw a Ford F-150 truck exit a parking lot. Ferguson saw an unidentified man run after the truck as it pulled away. The man on foot then turned around and began walking back to the parking lot entrance. As the truck's passenger door opened, Officer Ferguson pulled the truck over. Officer Ferguson subsequently arrested Nava, who was driving the truck, for driving while intoxicated.

Nava moved to suppress evidence resulting from the stop on the basis that Officer Ferguson did not have reasonable suspicion to stop Mr. Nava's truck. Nava presented his motion to the trial court, and the trial court ruled:

THE COURT: This is your motion, [counsel]?

COUNSEL: Yes, sir.

THE COURT: I am going to rule based on the face of the motion. Your motion is denied.

[COUNSEL]: Can we get a hearing on that, Judge?

THE COURT: We just did.

[COUNSEL]: We didn't get – I want to put some stuff on – I want to get the officer on the record.

[THE COURT]: Well, I can rule either on the basis of your motion, on witness' affidavits, on testimony, or some combination. But your motion on its face establishes the basis for me denying your motion to suppress.

[COUNSEL]: Can I get finding[s] of fact and conclusion[s] as well?

THE COURT: They are contained in your motion.

[COUNSEL]: Is that all on the record, Judge?

THE COURT: Your motion is the record.

[COUNSEL]: But is this all on the record?

THE COURT REPORTER: Yeah.

THE COURT: Uh-huh.

[COUNSEL]: Well, can I call a witness?

THE COURT: No. No need. I've already ruled.

[COUNSEL]: Okay. Thank you, Judge.

3

THE COURT: Thanks.

Nava filed a notice of appeal. Nava then moved to abate his appeal requesting that we order the trial court to submit findings of fact and conclusions of law. We granted Nava's motion. Upon abatement, the trial court conducted a hearing at which the State read facts from the police officer's offense report into the record. The court then entered findings that the stop was justified either under the community caretaking exception or based upon a suspicion of reckless driving.

## Discussion

### A. Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *See Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). The trial court is the sole trier of fact and judge of the weight and credibility of the evidence and testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Accordingly, we defer to the trial court's determination of historical facts if the record supports them. *Ford*, 158 S.W.3d at 493. We review de novo the trial court's application of the law to those facts. *Id.* "[T]he prevailing party is entitled to 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) (quoting *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). A trial court's ruling will be sustained if it is "reasonably

4

supported by the record and correct on any theory of law applicable to the case."

*Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (citing *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)).

**B.      Post-Abatement Hearing**

As a preliminary matter, Nava contends that the trial court erred by hearing evidence at the post-abatement hearing while the case was on appeal.  Nava contends that by allowing post-abatement evidence into the record, the trial court impermissibly altered the appellate record.  The State agrees with Nava's position. Nava moves to strike from the record the trial court's findings based on the post-abatement evidence and the police report itself, which was never offered into evidence or made a part of the record.  He further submits that without the evidence added to the record after abatement, there is no evidence in the record to support the trial court's conclusion that the traffic stop was reasonable.

We concur with the State and with Nava that the trial court erred in adducing further evidence after we abated the case.  A pending appeal suspends all proceedings in the trial court except those ordered by the Court of Appeals.  *See* TEX. R. APP. P. 25.2(g) ("Once the record has been filed in the appellate court, all further proceedings in the trial court—except as provided otherwise by law or by these rules—will be suspended until the trial court receives the appellate-court mandate.").  When an appeal is abated, the trial court regains limited jurisdiction.

5

*Lewis v. State*, 711 S.W.2d 41, 43–44 (Tex. Crim. App. 1986).  However, "[a] trial court is not authorized to conduct an evidentiary hearing [upon abatement] to develop a record of *new testimony* and *other evidence* that was not presented at trial, or developed on motion for new trial."  *Id.* at 43–44 (Tex. Crim. App. 1986) (emphasis in original) (holding that trial court "exceeded [its] authority under the mandate of abatement").  If such evidence is introduced, the appellate court may not consider it.  *See id.* at 44.

We abated this case for the limited purpose of allowing the trial court to enter findings of fact and conclusions of law.  *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006).  Because our abatement order did not provide for an evidentiary hearing, the trial court erred when it heard evidence not before the court when it decided Nava's motion to suppress.  Thus, we do not consider the evidence adduced at the hearing after abatement, or the findings based on that evidence.

## C.    Reasonable Suspicion to Detain and Burden of Proof

The Fourth Amendment guarantees a defendant's right to be free from unreasonable searches and seizures.  U.S. CONST. amend. IV.  Generally, this requires a police officer to obtain a warrant based on probable cause before detaining or searching a person. *See Maryland v. Dyson*, 527 U.S. 465, 466, 119 S. Ct. 2013, 2014 (1999); *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).

However, neither a warrant nor probable cause is necessary if a search or seizure falls within one of the "specifically established and well delineated exceptions" to the warrant requirement. *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135 (1993); *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). One such exception justifies searches and seizures by police officers in their community caretaking roles. *Cady v. Dombrowski*, 413 U.S. 433, 446–47, 93 S. Ct. 2523, 2530–31 (1973); *Wright v. State*, 7 S.W.3d 148, 152 (Tex. Crim. App. 1999).

Our determination of this appeal turns in part on who bore the burden of proof at the hearing. On a motion to suppress, the defendant bears the initial burden of producing some evidence that rebuts the presumption of proper police conduct. *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013); *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009).

An allegation in the defendant's motion that the defendant was arrested without a warrant is sufficient to meet this burden. *See Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002) ("By providing for a determination of the merits of such a motion on the motion itself, Art. 28.01, § 1(6), established the motion to suppress as the basis for an allegation of a Fourth Amendment violation."). In this case, Nava specifically challenged that the officer lacked any reasonable suspicion to stop Nava. Once the defendant establishes the absence of a warrant, the burden

7

shifts to the State to prove the warrantless search in question was reasonable under the totality of the circumstances. *Amador*, 221 S.W.3d at 672–73. This burden may be satisfied by proving the existence of an exception to the warrant requirement. *See Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007).

In this case, the State contends, and the trial court found, that Officer Ferguson had acted under the community caretaking exception or, alternatively, that the Nava's actions gave Officer Ferguson a reasonable suspicion to believe he was engaging in reckless driving. We address these findings in turn.

## 1. Community Caretaking Exception

Nava observes that, after disregarding the post-abatement police report proffered into evidence, the record does not support the trial court's finding that the stop was reasonable based on the community caretaking exception. The only description of the police encounter in the record is an unsworn summary from Nava's memorandum in support of his motion to suppress:

> "On September 16, 2013, Officer Ferguson was on patrolling [sic] the 2900 block of Shaver. Officer Ferguson saw a Ford F-150 truck exit a parking lot and merge onto Shaver. Officer Ferguson saw an unidentified male appear to run after the truck and [sic] as it drove north on Shaver. The male stopped running, turned around, and began walking back to the parking lot entrance. Right as the passenger door opened, Officer Ferguson initiated a traffic stop on the Ford F-150, which was being driven by the Defendant. Officer Ferguson states in his Offense Report he stopped the vehicle because he believed a disturbance was occurring and subsequently arrested the defendant for DWI."

8

Under the community caretaking exception, "a police officer may stop and assist an individual whom a reasonable person—given the totality of the circumstances—would believe is in need of help." *Wright*, 7 S.W.3d at 151. In *Wright v. State*, the Court of Criminal Appeals established four factors to determine whether an officer acted reasonably within the community caretaking function: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance independent of that offered by the officer; and (4) to what extent the individual—if not assisted—presented a danger to himself or others. *Id.* at 152.

For a search or seizure to be reasonable, the officer must actually be motivated by a community caretaking purpose. *Corbin v. State*, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002) (distinguishing *Whren v. United States*, 517 U.S. 806, 819, 116 S. Ct. 1769, 1777 (1996)). The trial court heard no evidence in this regard.

In response, the State discusses the four *Wright* factors, and relying upon Nava's memorandum, contends that the trial court reasonably could have concluded from the unsworn legal brief alone that the officer acted reasonably in stopping Nava. It cites *Doiron v. State* as an example of a case with similar facts in which the court found that the police officer had acted reasonably. *Doiron v.*

*State*, 283 S.W.3d 71, 75 (Tex. App.—Beaumont 2009, no pet.). In *Doiron*, however, the officer testified that he pulled the defendant over out of concern for the defendant's welfare. *Id.* The record in the present case contains no affidavit or other evidence of the basis for Officer Ferguson's stop. While it may be that it would have been reasonable for the officer to stop Nava in his community caretaking function, without evidentiary support, there is no basis to conclude that the officer intervened for this reason and not for ordinary investigative purposes.

The State also cites *Cantu v. State*, in which we upheld a trial court's disposition of the defendant's motion to suppress without conducting an evidentiary hearing. No. 01-88-01029-CR, 1989 WL 40718 (Tex. App.—Houston [1st Dist.] 1989, no pet.) (not designated for publication). Like *Doiron*, *Cantu* is distinguishable from the present case because the trial court denied the defendant's motion based on both the motion to suppress and affidavits introduced before it. *Id.* at *1. Here, because the trial court decided Nava's motion without affidavits, testimony, or other evidence, the memo in support of the motion to suppress, without more, is insufficient to meet the State's burden to show that the community caretaking exception applies. *See id.*; *see also Bishop*, 85 S.W. 3d at 821; *Rodriguez v. State*, 844 S.W.2d 744, 745 (Tex. Crim. App. 1992) (considering motion to suppress together with attached affidavit to determine motion's merits).

## 2. Reckless Driving

Nava next contends that the evidence does not support the trial court's finding that Officer Ferguson reasonably suspected that Nava committed the offense of reckless driving. The court found Nava's act of opening the door of his truck while exiting a parking lot "reckless per se." We note, however, that the unsworn legal memorandum, which contained the only description of events before the trial court at the motion to suppress, does not state that Nava opened the passenger door, or whether he was alone in the truck. It also does not state that the truck was moving when the passenger door opened.

A person commits the offense of reckless driving if the person drives a vehicle in willful or wanton disregard for the safety of persons or property. TEX. TRANSP. CODE ANN. § 545.401 (West 2011). As applied to reckless driving, willful and wanton disregard means deliberate and conscious indifference to the safety of others. *Dixon v. State*, 358 S.W.3d 250, 257 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

A police officer may temporarily detain a person for investigative purposes if the officer reasonably suspects that the detained person is connected with a crime. *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 1880 (1968); *Wade v. State*, 422 S.W.3d 661, 668–69 (Tex. Crim. App. 2013). "A police officer has reasonable suspicion for a detention if he has specific, articulable facts that, when

11

combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Wade*, 422 S.W.3d at 668; *accord Terry*, 392 U.S. at 21–22, 88 S. Ct. at 1880. The reasonableness of a traffic stop undertaken for investigative purposes is not determined by the actual motivations of individual officers. *Whren*, 517 U.S. at 813, 116 S. Ct. at 1774.

The trial court heard no evidence and was presented with no sworn affidavits. Thus, the circumstances surrounding the open door (for example, whether the truck was stopped or moving and the speed at which it was moving), as well as the officer's account of the events, are absent from the record. The record is silent as to the circumstances that would allow the trial court to determine whether the officer reasonably suspected that Nava's actions manifested a deliberate and conscious indifference to the safety of others. Because neither side proffered affidavits, and the trial court denied Nava's request for a hearing, the record contains no evidentiary support for the State to meet its burden to overcome the allegation that the officer lacked reasonable suspicion to stop Nava.

Accordingly, we hold that the trial court erred by denying Nava's motion to suppress based on the record before it.

### 3. Harm Analysis

Having concluded that error exists in the record, we perform the harm analysis required by Rule 44.2(a) of the Rules of Appellate Procedure. *See* TEX. R. APP. P. 44.2.

When the defendant is denied the right to present a defense, the State gains leverage in plea bargaining that it would otherwise lack. *See Holmes v. State*, 323 S.W.3d 163, 173–74 (Tex. Crim. App. 2009); *McKenna v. State*, 780 S.W.2d 797, 799–800 (Tex. Crim. App. 1989); *Kraft v. State*, 762 S.W.2d 612, 614–15 (Tex. Crim. App. 1988). Thus, if we cannot say that a trial court's failure to allow a defendant to present a defense did not contribute to the defendant's guilty plea, we must reverse. *See Holmes*, 323 S.W.3d at 173–74 (citing *McKenna*, 780 S.W.2d at 799).

Nava pleaded guilty immediately after the trial court denied his motion. A successful motion to suppress the fruits of the traffic stop could have excluded the evidence admitted against Nava. Because we cannot conclude beyond a reasonable doubt that the denial of Nava's motion to suppress did not cause him to plead guilty, the trial court's error was not harmless.

## Conclusion

We reverse the judgment of the trial court and remand the case to the trial court for further proceedings consistent with this opinion.

Jane Bland
Justice

Panel consists of CHIEF Justice Radack and Justices Bland and Huddle.

Publish. *See* TEX. R. APP. P. 47.2(b).