**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00051-CR**
_____

**BRENT MAHLON WELLS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law**
**Orange County, Texas**
**Trial Cause No. C113190-CR**

**MEMORANDUM OPINION**

Appellant Brent Mahlon Wells ("Wells" or "Appellant") appeals his conviction for driving while intoxicated ("DWI"), a Class B misdemeanor. *See* Tex. Penal Code Ann. § 49.04(b). In a single appellate issue, Wells argues that the officer who stopped his vehicle lacked reasonable suspicion to conduct the stop. Consequently, Wells contends that the stop constituted an unreasonable search and seizure and thus violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. *See* U.S. CONST. amends. IV, XIV. Wells therefore

1

argued that any evidence obtained as a result of that stop was illegally obtained and should be suppressed.

Based on the above position, Wells moved to suppress the evidence of his intoxication. After the trial court denied the motion, Wells agreed to a plea bargain, the trial court entered a judgment of conviction pursuant to that agreement and imposed a one hundred eighty-day probated sentence in addition to fines and court costs. The trial court certified Wells' right to appeal as to the Motion to Suppress, only. Wells then appealed his conviction raising one issue on appeal wherein he contends the trial court erred in denying his motion to suppress because the State failed to produce any evidence of a violation of the traffic statute in question. We affirm the trial court's order.

## BACKGROUND

The arresting officer, Trooper Luke Smith, was the sole witness at the hearing on Appellant's Motion to Suppress. The State also introduced the video of the stop from Trooper Smith's dash camera. We summarize the evidence below.

DPS Trooper Luke Smith's Testimony

Trooper Luke Smith ("Smith") testified to his observations of Wells' driving on the night of January 29, 2020, as the video of his dash camera was played for the court. Specifically, Smith testified that it was late at night and had begun to "sprinkle or lightly rain[,]" and visibility was limited. As Smith was patrolling I-10

2

westbound, he saw Wells "enter the highway, at which point [Wells] failed to drive in a single lane. [Wells] crossed over the outside fog line, began weaving within his lane, [and] crossed over the outside fog line again," prompting Smith to initiate the traffic stop. Smith stated that while he observed Wells, Wells crossed the outside fog line, crossed the inside lane, then crossed the outside white line again. In Smith's opinion, Wells could have been "a hazard to him himself or other people on the roadway[,]" since he was "ping-ponging in the lane, kind of going back and forth[]" in the dark on a wet highway. Smith therefore stopped Wells for the traffic violation of "[f]ailure to drive in a single lane, he was failing to operate his vehicle within the two designated lines of lane of travel." The Trooper testified that due to the "conditions of the night and the weather" Wells was not driving in a safe manner.

According to Smith, he observed Wells was not driving as nearly as practical within a single lane, as required by the Texas Transportation Code. Smith agreed there was no debris in Wells' lane of traffic. Smith conceded that under some circumstances, which do not apply here, it may be permissible to drive onto the shoulder, and Smith did not see anything on the shoulder or in the left lane that Wells could have hit. Smith also acknowledged that "[f]rom the video it's hard to tell[]" where Wells' tires were with respect to the fog line and the lane divider, and that Wells never crossed into an oncoming lane of travel.

3

Dash Camera Video

The video from Smith's dash camera was played for the court. It shows Wells' vehicle entering the highway from the ramp and travelling in the right lane. The video shows Wells' vehicle cross the fog line at least once, and then the video shows Wells's vehicle cross the dashed line that separated the right lane of travel from the middle lane.

The video also shows that after Smith stopped Wells, Smith told Wells that he was stopped for failing to drive in a single lane and Smith requested to see Wells' license and proof of insurance. Smith then asks Wells whether he had a reason for failing to drive in a single lane and Smith explains "failing to drive in a single lane." Smith can also be heard stating he smells an "odor of alcohol coming from the vehicle." The video also shows Smith administering a field sobriety test and arresting Wells for a DWI.

**STANDARD OF REVIEW**

We review rulings on motions to suppress using a bifurcated standard of review. *See Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). In a hearing on a motion to suppress, "the trial judge is the sole trier of fact and judge of credibility of witnesses and the weight to be given to their testimony." *Id*. at 190. If the trial court did not make any explicit findings of fact in making its ruling, the reviewing court "infers the necessary factual findings that support the trial court's

4

ruling if the record evidence (viewed in the light most favorable to the ruling) supports these implied fact findings." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). For that reason, we afford almost total deference to the ruling the trial court made on the motion when the trial court's ruling hinged on its findings of the historical facts, particularly when they turn on the trial court's decisions about matters concerning credibility and demeanor. *Id*. We apply this highly deferential standard "regardless of whether the trial court has granted or denied a motion to suppress[.]" *Id*. By using this standard, we give the trial court's ruling the strongest legitimate view of the evidence, and in the absence of explicit findings, we review the record to determine whether the evidence supports the trial court's ruling denying the motion. *Id*.

## APPLICABLE LAW

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. U.S. CONST. amend IV. This protection is incorporated to the states through the Fourteenth Amendment. U.S. CONST. amend. XIV; *Mapp v. Ohio*, 367 U.S. 643, 660 (1961). When a search or seizure is unreasonable, any evidence obtained thereby is inadmissible. *See Ill. v. Krull*, 480 U.S. 340, 347 (1987). This exclusionary rule generally prevents the State from using the evidence in a criminal proceeding against the party whose rights were violated. *Id*. This rule further precludes the State from using evidence that police obtained

5

directly or indirectly from an illegal seizure, evidence courts often refer to as the "fruit of the poisonous tree." *See Wong Sun v. U.S.*, 371 U.S. 471, 488 (1963); *Smith v. State*, 542 S.W.2d 420, 422 (Tex. Crim. App. 1976).

A law enforcement officer having a "reasonable, articulable suspicion" that a crime has been, is being, or is about to be committed may stop a person to investigate that possibility. *See Ill. v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). Under the rationale of *Terry*, a traffic stop is usually considered an investigative stop. *See Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *Bullock v. State*, 426 S.W.3d 226, 229 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Therefore, if an officer has a reasonable, articulable suspicion that a driver has violated a traffic law, the officer may stop the vehicle to investigate the matter. *See Thomas v. State*, 336 S.W.3d 703, 707–10 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). "During an investigation of a traffic violation, if an officer develops [a] reasonable suspicion that another violation has occurred, the scope of the initial investigation expands to include the new offense." *Goudeau v. State*, 209 S.W.3d 713, 719 (Tex. App.—Houston [14th Dist.] 2006, no pet.). "When making a determination of reasonable suspicion, we consider the totality of the circumstances." *State v. Hardin*, 664 S.W.3d 867, 872 (Tex. Crim. App. 2022).

Section 545.060(a) of the Texas Transportation Code states:

(a) An operator on a roadway into two or more clearly marked lanes for traffic:

6

(1) shall drive as nearly as practical within a single lane: and

(2) may not move from the lane unless that movement can be made safely.

Tex. Transp. Code Ann. § 545.060(a). In *Hardin*, the Texas Court of Criminal Appeals explained that subsection (a)(1) does not require a motorist to remain entirely within a single lane, "it only requires that a motorist remain entirely within a single marked lane 'as nearly as practical.'" 664 S.W.3d at 874. Further, subsection (a)(2) prohibits any movement from the single lane unless that movement can be made safely, and when considered in connection with (a)(1), any unsafe weaving out of the lane without creating a safety risk does not violate the statute because "incidental weaving is still staying 'as nearly as practical' entirely within the single lane." *Id*. Consequently, the Court held that a person violates section 545.060(a) only if he fails to maintain a single lane of traffic in an unsafe manner. *Id*. at 876. That said, the Court explained that even under circumstances in which a motorist crosses from one lane to another, without raising a safety concern, the behavior can still be considered along with other facts to provide reasonable suspicion of the offense of driving while intoxicated. In *Hardin*, the officer testified he stopped Hardin for violating section 545.060(a) and based on the review of the record and precedent, the Court concluded that the detaining officer did not have reasonable suspicion to stop Hardin for violating section 545.060(a).

## ANALYSIS

In his sole appellate issue, Wells relies on *Hardin*, and similar authority arguing that his lane deviations were not unsafe, and he contends Smith lacked reasonable suspicion to believe that Wells committed a traffic violation. Wells contends that if Smith had not made the traffic stop, there would be no evidence of Wells' DWI offense. Consequently, Wells argues, the evidence of his intoxication was illegally obtained, and the trial court should have suppressed it.

As in this case, the defendant in *Hardin* failed to drive in a single lane at night but the driver "did not hit anything or even come close to hitting anything." *Id*. at 870. After being stopped for violating section 545.060 of the Transportation Code, Hardin, like Wells, was arrested for violating a different criminal statute. *See id.* Both Hardin and Wells moved to suppress the evidence obtained from the warrantless traffic stop, arguing that the officer lacked reasonable suspicion for the traffic stop. *See id*.

The *Hardin* trial court granted the motion to suppress, and it entered written findings of fact stating that "there were no other vehicles in the vicinity at the time or any other circumstance to suggest that this movement was unsafe." *Id*. at 871. The appellate courts deferred to the trial court's findings of historical fact. *Id*. There was no testimony in *Hardin* that the officer believed the driver was driving in an unsafe manner.

In this case, conversely, the trial court heard Smith's testimony that Wells' driving, "ping-ponging" as Smith termed it, was not safe due to the darkness, wet road conditions, and impaired visibility. In the case at bar, the trial court did not make written findings, but it implicitly found that Wells' driving, considering the totality of the circumstances, was unsafe, and the implicit finding is supported by the officer's testimony. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007) (upholding implicit findings when supported by evidence); *Doiron v. State*, 283 S.W.3d 71, 73 (Tex. App.—Beaumont 2009, no pet.) (same). We defer to the trial court's finding that Wells' driving was unsafe. *See Lerma*, 543 S.W.3d at 190 (deferring to the trial court's factual determinations).

The *Hardin* Court distinguished its holding from a previous decision wherein it held that the officer was justified in stopping the defendant's vehicle due to the officer's reasonable suspicion of a DWI. *Compare Hardin,* 664 S.W.3d at 876–78, *with Leming v. State*, 493 S.W.3d 552, 562–65 (Tex. Crim. App. 2016). Referring to its *Leming* opinion, the *Hardin* Court stated:

> We held under those circumstances that these facts gave rise to reasonable suspicion for the offense of DWI. Thus, even under circumstances in which a motorist crosses from one lane to another without necessarily raising a safety concern, that behavior can still be considered along with other facts to provide reasonable suspicion to stop for suspicion of driving while intoxicated. Our interpretation of § 545.060 in this case should not be misconstrued or overread to suggest that a traffic stop is always unreasonable in every instance in which a driver weaves in and out of a single lane.

9

*Hardin*, 664 S.W.3d at 878.

We overrule Wells' sole issue on appeal.

## CONCLUSION

Since Wells has not shown that the officer lacked a reasonable suspicion to perform the traffic stop that led to Wells' DWI arrest, we affirm the trial court's order denying Wells' Motion to Suppress.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on October 21, 2025
Opinion Delivered November 5, 2025
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.