**Affirmed and Memorandum Opinion filed October 6, 2016.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-15-00871-CR

_____

**MARCELINO EDWARDS OSUNA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1444937**

## MEMORANDUM OPINION

Appellant Marcelino Edwards Osuna appeals his conviction for aggravated robbery alleging that his guilty plea was involuntary. *See* Tex. Code Crim. Proc. Ann. art. 26.13(b). We conclude that appellant's guilty plea was made knowingly and voluntarily. Accordingly, we affirm.

### BACKGROUND

Appellant was charged by indictment with the offense of aggravated

robbery, alleged to have been committed while appellant was out on bail for capital murder. Appellant decided to plead guilty without an agreed recommendation on punishment from the State. Appellant was admonished in writing as to the consequences of pleading guilty. Appellant signed a "Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession" in which he averred that he fully understood the consequences of his plea and, after consulting with his attorney, requested that the trial court accept the plea.

Prior to accepting appellant's plea, the trial court orally admonished appellant regarding his right to a jury trial and his right to confront the witnesses against him. The trial court explained the range of punishment for the offense was anywhere from probation to life in prison. The trial court also explained that the capital murder charge against appellant was open and the State "could at some point choose to prosecute that case or at least present evidence of that." To each of these admonishments appellant responded that he understood. Appellant averred that no one promised anything or forced, threatened, or coerced him in any way to plead guilty. At the conclusion of the plea hearing, the trial court withheld a finding of guilt pending a presentence investigation report (PSI).

Before setting a hearing date for punishment, the trial court asked appellant to explain how he was involved in the aggravated robbery. Appellant explained that he and three co-defendants went to the complainant's house. One of the co-defendants remained in the car. Appellant and the other two co-defendants went into the house with the intent to rob the complainant. Two of the co-defendants carried guns. Appellant explained that they were arrested "in the process" of robbing the complainant. Appellant stated, "I went and I helped them, so I'm guilty."

At the conclusion of the plea hearing, the prosecutor asked to put the

following statement concerning the capital murder charge "on the record":

> We just — the State wanted to put on the record, Judge, that — I know you mentioned it previously that we intend to go forward on the capital. But we just want to make it clear for the purposes of the record, that we do intend to prove up the capital murder in the punishment hearing for the PSI. Although we are not consenting under Penal Code 12.45 to that then barring our prosecution of the capital at a later point.
>
> So, while we do intend to prove it up, we're also going to leave the capital open and decide after the PSI on the aggravated robbery what to do with the capital.
>
> THE COURT: Okay. So, you're going to wait and see what happens at the sentencing before you decide. Depending on what happens there, you will either dismiss it or continue on with it?
>
> MS. CALLIGAN [prosecutor]: Yes, Your Honor.
>
> THE COURT: Okay. All right.
>
> MR. MORROW [defense counsel]: We've reviewed that with that [sic] defendant in detail, Your Honor. He's aware of that.

During the punishment hearing, the arresting officer testified that appellant was arrested in a house with two co-defendants while a robbery was in progress. When appellant was arrested, he was wearing an ankle monitor, which the officer later learned was a condition of appellant's bond on the capital murder charge. After arresting the men, officers found two handguns hidden in a bedroom in the house.

The complainant testified that three men entered her home and attempted to rob her at gunpoint. At the time, the complainant's mother and three grandchildren were in the home. A neighbor had called the police, and officers arrived while the robbery was in progress. The police arrested the three men and found the weapons.

Appellant's uncle testified about the pending capital murder charge. He testified that appellant and appellant's two brothers agreed to rob the victim by

3

setting up a fake car purchase. The victim of the capital murder earned his living buying and selling used cars. When the victim became agitated during the robbery, one of appellant's brothers, Steven Osuna, stabbed the victim. After killing the victim, the three brothers buried the body under a chicken coop in the backyard of Veronica Muniz's home. Muniz was identified as Steven's girlfriend. Houston police officers later received a 911 call from Muniz informing police that a body was buried in her backyard. The police discovered a body buried under multiple layers of dirt and cement under the chicken coop. The body was wrapped in plastic secured by duct tape with a Superman logo. A roll of duct tape with Superman logos was discovered in Muniz's home. It was also discovered that Muniz had been using the victim's credit card. Muniz was arrested and questioned. After questioning Muniz, appellant and another brother were arrested for capital murder.[1]

At the conclusion of the punishment hearing, the trial court sentenced appellant to life in prison. Several months after the court sentenced appellant in the aggravated robbery case, the State dismissed the capital murder charge.

## ANALYSIS

In a single issue on appeal appellant argues that the trial court erred in accepting his guilty plea because his plea to aggravated robbery was "inherently coerced" by the capital murder charge that the State left pending until after appellant pleaded guilty to aggravated robbery.

A trial court may not accept a plea of guilty unless it appears that the defendant is mentally competent and that the plea is freely and voluntarily made. *See* Tex. Code Crim. Proc. Ann. art. 26.13(b). The voluntariness of a guilty plea is determined by the totality of the circumstances. *Griffin v. State*, 703 S.W.2d 193,

---

[1] Following a SWAT standoff outside Muniz's home, officers discovered that appellant's brother Steven had died by hanging himself.

4

196 (Tex. Crim. App. 1986). Where, as here, the record shows that the defendant was duly admonished, there is a prima facie showing that the guilty plea was entered knowingly and voluntarily. *See Mallett v. State*, 65 S.W.3d 59, 64 (Tex. Crim. App. 2001). By signing the admonishments, a heavy burden is placed on the defendant to show a lack of voluntariness. *See Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) (per curiam); *Chapa v. State*, 407 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The defendant must demonstrate that he did not fully understand the consequences of his plea such that he suffered harm. *See Martinez*, 981 S.W.2d at 197.

Appellant does not contend that he was not properly admonished by the trial court, and appellant admits that he acknowledged that his plea was not coerced or forced. The record reflects that appellant entered his guilty plea with full knowledge that the State intended to wait until after the punishment hearing in this case before it determined whether to proceed with prosecution of the capital murder charge against appellant. Appellant argues that he has overcome the presumption that his plea was voluntary and knowing because the evidence of appellant's participation in the capital murder was weak.

The choice to plead guilty to a lesser offense to avoid the risk of a capital conviction is a tactical decision. *Perez v. State*, 608 S.W.2d 634, 637 (Tex. Crim. App. 1980). Appellant argues that he would not have pleaded guilty to aggravated robbery if he had known the quality of the State's evidence in the capital murder case before he entered his plea. A defendant, however, is not entitled to withdraw his plea simply because he discovers later that he misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. *Brady v. United States*, 397 U.S. 742, 757 (1970).

Appellant was apprehended while in the process of an aggravated robbery.

5

By his own admission, he participated in the robbery and is guilty of the offense. Appellant cites no authority, and we have located none, for the proposition that a guilty plea to one offense is "inherently coerced" by the failure of the State to prosecute a greater offense. There is no evidence that appellant pleaded guilty to aggravated robbery to avoid a trial on the capital murder charge. The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative sources of action open to the criminal defendant. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In this case, there is no evidence that appellant was coerced into choosing to plead guilty to aggravated robbery.

Accordingly, the record before us demonstrates that appellant's decision to plead guilty was made knowingly and voluntarily and was not a product of coercion. *See Perez*, 608 S.W.2d at 636–37 ("Choosing to plead guilty to a lesser offense rather than to risk a capital conviction is a tactical decision."). Based on the totality of the circumstances, we conclude the trial court did not err in accepting appellant's guilty plea.

After asking this court to reverse and remand for further proceedings, appellant asks this court for alternative relief. Specifically, "appellant requests that this Court abate his appeal and remand the case for further fact-finding regarding the voluntariness of appellant's plea." Appellant cites no authority requiring abatement for "further fact-finding regarding the voluntariness of appellant's plea." *See* Tex. R. App. P. 38.1(i) (brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities"). Appellant provides neither legal citation nor argument concerning the standard for abatement under these circumstances. On the issue of abatement, appellant's brief is inadequate, and we overrule his request for alternative relief. *See Williams v. State*,

6

___ S.W.3d ___, 14-15-00236-CR, 2016 WL 4408967, at *11 (Tex. App.—Houston [14th Dist.] Aug. 18, 2016, no. pet. h.) (overruling inadequately briefed issue because it is "incumbent upon counsel to cite specific legal authority and to provide legal argument based upon that authority") (citing *Rhoades v. State*, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996)).

Moreover, to the extent appellant argues that this court should abate the appeal for a hearing on the voluntariness of his plea, we note that "[a] trial court is not authorized to conduct an evidentiary hearing [upon abatement] to develop a record of new testimony and other evidence that was not presented at trial, or developed on motion for new trial." *Nava v. State*, 480 S.W.3d 759, 763 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (quoting *Lewis v. State*, 711 S.W.2d 41, 43–44 (Tex. Crim. App. 1986)). Therefore, an abatement for a fact-finding hearing is not authorized.

We overrule appellant's sole issue and affirm the trial court's judgment.


/s/    Tracy Christopher
       Justice


Panel consists of Chief Justice Frost and Justices Boyce and Christopher.
Do Not Publish — Tex. R. App. P. 47.2(b).